**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

BATES COUNTY MEMORIAL HOSPITAL
*et al.*,

     *Plaintiffs*,

    v.

ALEX M. AZAR II *et al.*,

     *Defendants*.

Civil Action No. 19-1767 (TJK)

---

**MEMORANDUM OPINION**

This case involves the interaction of two procedures through which hospitals may be reclassified for different Medicare reimbursement purposes.  Bates County Memorial and five other plaintiff hospitals are geographically located in urban areas of their states, but they qualify for—and in all but one case have secured—reclassification to rural status for certain reimbursement purposes under Section 401 of the Medicare Act.  They also applied for rural status for different reimbursement reasons under a Medicare reclassification scheme administered by the Medicare Geographic Classification Review Board (MGCRB).  The Secretary of Health and Human Services denied their applications, and Plaintiffs assert that the Secretary's unlawful interpretation of Section 401 is why they have not attained reclassification under that process.

Hospitals that are reclassified under Section 401 must be treated, for purposes of Subsection (d) of the Medicare Act (which includes the MGCRB process), "as being located in the rural area" of their states.  42 U.S.C. § 1395ww(d)(8)(E)(i).  A key MGCRB regulation, in turn, requires the MGCRB to compare the hospitals' hourly wage rates with others "in the area in which [they are] located."  42 C.F.R. § 412.230(d)(1)(iii)(C).  But in doing so, the Secretary

interpreted Section 401 to allow him to use other hospitals in the *urban* area in which applicant

hospitals are geographically located, instead of the *rural* area to which they were reclassified

under Section 401.

Plaintiffs sued, arguing that Section 401's command that they be treated as located in the

rural areas of their states forecloses the Secretary's application of the MGCRB regulation to

them in this way.  The Secretary argues, to the contrary, that the statute is vague, his

interpretation is reasonable, and it is entitled to *Chevron* deference.  Not so.  The Court agrees

with Plaintiffs that the text of the statute requires it to enter summary judgment on their behalf,

and it will remand the case to the Secretary for action consistent with this opinion.

**I.      Background**

**A.      The Statute and Regulation**

Under Subsection (d) of the Medicare Act, 42 U.S.C. § 1395ww(d), the Center for

Medicare and Medicaid Services (CMS) of the Department of Health and Human Services

(HHS) reimburses hospitals prospectively for inpatient costs at fixed rates.  Those rates depend

in large part on a wage index the Secretary assigns to the specific geographic area where the

hospital is located.  "Hospitals located in urban areas are grouped and treated as a single labor

market based on the area, known as the Core Based Statistical Area ('CBSA'), in which they are

physically located."  *Geisinger Cmty. Hosp. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human

Servs.*, 794 F.3d 383, 387 (3d Cir. 2015).  "Hospitals located in rural areas receive a wage index

that applies to all rural areas in their state."  *Id.*; *see* 42 U.S.C. § 1395ww(d)(2)(D) ("[T]he term

'rural area' means any area outside [an urban CBSA]").

Subsection (d) includes the two reclassification systems at issue here that allow hospitals

designated as urban to reclassify as rural to obtain more favorable reimbursement rates:

(1) Section 401 reclassification and (2) MGCRB reclassification.  Under Section 401 of the

Medicare Act, 42 U.S.C. § 1395ww(d)(8)(E), a hospital that successfully reclassifies as rural

may obtain, for example, more favorable drug pricing than if it was urban.  *Lawrence + Mem'l*

*Hosp. v. Burwell*, 812 F.3d 257, 258 (2d Cir. 2016).  And by successfully applying to the

MGCRB under 42 U.S.C. § 1395ww(d)(10) for reclassification as rural, a hospital can receive a

higher wage reimbursement rate.  *Id.*  Section 401 requires the Secretary, upon receiving a

satisfactory application from an urban hospital to reclassify as rural, 42 U.S.C.

§ 1395ww(d)(8)(E)(ii), to "treat the hospital as being located in the rural area . . . of the State in

which the hospital is located" "[f]or purposes of" Subsection (d), *id.* § 1395ww(d)(8)(E)(i),

which includes the MGCRB process, *id.* § 1395ww(d)(10).

Section 401 and the MGCRB each have their own reclassification criteria.  For Section

401, a hospital must meet certain population or geographic characteristics.  *See id.*

§ 1395ww(d)(8)(E)(ii).  And as for the MGCRB, the Secretary—under his authority in

Subsection (d) to "publish guidelines to be utilized by the [MGCRB] in rendering decisions on

applications" for reclassification, *id.* § 1395ww(d)(10)(D)(i)—promulgated three criteria for a

hospital to reclassify: (1) the hospital must be near the area to which it seeks reclassification

(within 35 miles for a rural hospital or within 15 miles for an urban hospital), 42 C.F.R.

§ 412.230(b)(1); (2) the hospital's average hourly wage (AHW) must be at least 82 percent (for a

rural hospital) or 84 percent (for an urban hospital) of the AHW for hospitals in the area to which

it seeks reclassification, *id.* § 412.230(d)(1)(iv)(E); and (3) the hospital's AHW must be at least

106 percent (for a rural hospital) or 108 percent (for an urban hospital) of the AHW of hospitals

"in the area in which the hospital is located," *id.* § 412.230(d)(1)(iii)(C).

When reviewing applications for MGCRB reclassification, the Secretary applies the three

rural hospital criteria (35-mile proximity, 82-percent AHW, and 106-percent AHW) to hospitals

in urban areas that have been reclassified to rural under Section 401.  But for purposes of the third, the Secretary uses the *geographic* area of a hospital reclassified as rural under Section 401 as the "area in which the hospital is located."  Thus, he requires a Section 401-reclassified rural hospital's AHW to be at least 106 percent of the AHW of hospitals in its *urban* CBSA.

## B.     This Lawsuit

Plaintiffs are six urban, acute care hospitals that sued the Secretary, the Administrator of CMS, and the Chairman of the MGCRB for violations of the Medicare Act, 42 U.S.C. § 1395ww(d)(8)(E)(i), and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, in June 2019.  ECF No. 1.  They each seek reclassification as rural both under Section 401 and before the MGCRB.  ECF No. 16 ("2d Am. Compl.") ¶¶ 1–6, 13.  And while they qualify for Section 401 reclassification as rural, they have been denied MGCRB reclassification as rural during the September 2019 application cycle.  Hrg. Tr. 13:25–14:4, 14:17–18; Tobias Decl. ¶ 3; 2d Am. Compl. ¶¶ 13, 44.[1]  Each of them "would be able to prove to the MGCRB that its wages are at least 106% of the three-year average hourly wage of all other *hospitals in the rural area of the state in which the Hospital is located*."  Tobias Decl. ¶ 14.  Plaintiffs allege that the practice of comparing them to urban hospitals where they are geographically located conflicts with Section 401's mandate to "treat the hospital as being located in the rural area . . . of the State in which the hospital is located" "[f]or purposes of" Subsection (d).  42 U.S.C. § 1395ww(d)(8)(E)(i).[2]  According to Plaintiffs, the Secretary's practice has deprived them of hundreds of thousands of dollars in annual Medicare reimbursement.  2d Am. Compl. ¶ 42; Tobias Decl. ¶ 15.  Plaintiffs

---

[1] Citations to the April 30, 2020, hearing are to page numbers in a "rough" transcript, since the final transcript is unavailable.

[2] Plaintiffs do not challenge the regulation itself, but the way in which the Secretary has applied it to them.  *See* Hrg. Tr. 7:21–8:1, 8:10–15, 21:9–15.

seek declaratory relief that the Secretary's application of the regulation is contrary to Section 401

and an order that the Secretary decide their MGCRB applications without comparing their AHW

to that of hospitals in their states' urban CBSAs.  2d Am. Compl. at 12; ECF No. 13-3.  The

parties cross-moved for summary judgment.  ECF No. 13 ("Pl's Br."); ECF No. 18 ("Def's Br.");

*see also* ECF No. 20 ("Pl's Reply"); ECF No. 22 ("Def's Reply").

## II.      Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[W]hen a party seeks review of agency action under the APA, the district

judge sits as an appellate tribunal."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083

(D.C. Cir. 2001).  "The 'entire case' on review is a question of law."  *Id.*  "Under the

Administrative Procedure Act, a court may set aside an agency's final decision only if it is

'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Ams.*

*for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A)).

Courts analyze agency interpretations of statutes "under the familiar two-step framework

of *Chevron*."  *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018) (citing *Chevron*

*U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).  "If the Court determines

that 'Congress has directly spoken to the precise question at issue,' and 'the intent of Congress is

clear, that is the end of the matter.'"  *Id.* (quoting *Chevron*, 467 U.S. at 842).  "If, however, 'the

statute is silent or ambiguous with respect to the specific issue,' then the Court must determine

'whether the agency's answer is based on a permissible construction of the statute.'"  *Id.*

(quoting *Chevron*, 467 U.S. at 843).  "[A]gencies only 'possess whatever degree of discretion

[an] ambiguity allows.'"  *Loan Syndications & Trading Ass'n v. SEC*, 882 F.3d 220, 224 (D.C.

Cir. 2018) (second alteration in original) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013)).

"[U]nder *Chevron*, [courts] owe an agency's interpretation of the law no deference unless, after 'employing traditional tools of statutory construction,' [they] find [themselves] unable to discern Congress's meaning." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (quoting *Chevron*, 467 U.S. at 843 n.9). That is, courts "examine the [statute's] text, structure, purpose, and legislative history to determine if the Congress has expressed its intent unambiguously." *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 605 (D.C. Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 2296 (2017). While "[t]he starting point for [courts'] interpretation of a statute is always its language," a court may not stop after reading one textual provision in isolation. *Lindeen v. SEC*, 825 F.3d 646, 653 (D.C. Cir. 2016) (first alteration in original) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989)). "[I]n interpreting a statute, a court 'must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (quoting *Kelly v. Robinson*, 479 U.S. 36, 43 (1986)).

## III.   Analysis

The parties' dispute concerns the part of Section 401 that governs how the Secretary must treat hospitals that reclassify from urban to rural under it. The Court starts there:

> For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary *shall treat the hospital as being located in the rural area . . . of the State in which the hospital is located*.

42 U.S.C. § 1395ww(d)(8)(E)(i) (emphasis added). In the hospitals' view, because they qualify as rural under Section 401—which requires the Secretary to "treat the hospital as being located in the rural area" "[f]or purposes of" Subsection (d)—when the Secretary compares their AHW

6

for MGRCB reclassification under Subsection (d), he must consider "the area in which the

hospital is located," 42 C.F.R. § 412.230(d)(1)(iii)(C), to be the "rural area . . . of the State," 42

U.S.C. § 1395ww(d)(8)(E)(i).

Instead, the Secretary applies the MGCRB regulation by using the area in which the

hospital is "actually" or "geographically located." Def's. Br. at 11, 25. The Secretary concedes

that Section 401 "can be read literally to support Plaintiff[s'] view," *id.* at 17, but still argues that

(1) Plaintiffs waived this argument by failing to raise it during the notice and comment period of

an interim final rule in 2016, *id.* at 21; and (2) the statute is ambiguous at *Chevron*'s "step one,"

so the Court should defer to the Secretary's reasonable interpretation at "step two."[3] For the

---

[3] The Secretary argues that two of the Plaintiffs—Guadalupe Regional Medical Center and
Valley View Medical Center—lack standing because they did not obtain Section 401 status
before filing their Second Amended Complaint, and so "[a]ny decision by this court on how
Section 401 interacts with the MGCRB process would not affect those Plaintiffs." Def's Reply
at 8; *see* Def's Br. at 13 n.4. Typically, "[a]t least one plaintiff must have standing to seek each
form of relief requested in the complaint." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct.
1645, 1651 (2017). But here, Plaintiffs' relief is more particularized than usual—they seek an
order that the Secretary, "when reviewing any MGCRB applications by the[m]," "apply the
requirements applicable to hospitals located in the rural area of the state in which the hospital is
located," consistent with their interpretation of Section 401. 2d Am. Compl. at 12. Assuming
that each Plaintiff must show standing to obtain such relief, the Court is satisfied that Guadalupe
and Valley View have standing. They qualify for Section 401 reclassification, Tobias Decl. ¶ 3,
a point that the Secretary does not dispute, but only "want[] to be Section 401" if they get "the
full benefit of the statute," to include MGCRB reclassification as well, Hrg. Tr. 15:12–16; *see
also id.* at 14:16–18, 23:18–25. Because they have been denied the opportunity to pursue the
financial benefit of MGCRB rural reclassification by the Secretary's interpretation of Section
401, they have suffered a cognizable injury. Tobias Decl. ¶¶ 14, 15; *see Teton Historic Aviation
Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 725 (D.C. Cir. 2015). And the Court may redress
such an injury by ordering the Secretary to interpret Section 401 as they urge when considering
both Valley View's current MGCRB application (it has obtained reclassification under Section
401 since filing the Second Amended Complaint), *see* ECF No. 25 at 1, and the application that
Guadalupe represents it intends to file if granted relief in this case and once it is reclassified
under Section 401, *see* Hrg. Tr. 24:1–3.

reasons explained below, the Court finds the Secretary's waiver argument meritless and agrees with Plaintiffs that the Secretary's interpretation of the statute is unlawful.[4]

### A.      Waiver and Exhaustion of Remedies

The Secretary argues that Plaintiffs' failure to raise their Section 401 "statutory construction" argument about MGRCB rural reclassification "during the notice-and-comment period of a rulemaking proceeding 'constitutes a waiver of the argument in court.'"  *Id.* (quoting *Natural Res. Def. Council, Inc. v. EPA*, 25 F.3d 1063, 1074 (D.C. Cir. 1994)).  But Plaintiffs did not even participate in the April 2016 rulemaking at issue,[5] so they could not have "waived" an argument by failing to raise it in that proceeding.  *See* Def's Br. at 22 ("Plaintiffs . . . submitted no comment at all during the prescribed comment period on the [rule]."); *Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*, 270 F.3d 957, 958 (D.C. Cir. 2001) (finding that because the plaintiff lacked "any role in the rulemaking proceeding," it "could not be said to have 'waived' its argument by failing to advance it during those proceedings" (internal quotation omitted)).

Although the Secretary frames this as a waiver argument, it is better understood as questioning whether Plaintiffs exhausted their administrative remedies.  *See* Def's Br. at 22 ("[N]o public commenter raised the precise legal arguments that Plaintiff[s] seek to have adjudicated here.").  But a "traditionally recognized exception[s] to the exhaustion doctrine" provides that so long as the agency "in fact considered the issue" raised by "another party," a plaintiff does not have to be the one to "raise [the] issue" before suing.  *Washington Ass'n for Television & Children v. FCC*, 712 F.2d 677, 682 & n.10 (D.C. Cir. 1983).  Otherwise, "it would almost surely be futile for a party to raise an objection already made by someone else."  *Id.* at

---

[5] Medicare Program; Modification of Limitations on Redesignation by the Medicare Geographic Classification Review Board, 81 Fed. Reg. 23,428, 23,434 (Apr. 21, 2016).

682 n.10.  Thus, Plaintiffs need not raise an argument "during the rulemaking itself, so long as the agency actually considered the issue." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1084 (D.C. Cir. 1996); *cf. Appalachian Power Co. v. EPA*, 135 F.3d 791, 818 (D.C. Cir. 1998) ("The purpose of the exhaustion requirement is to ensure that the agency is given the first opportunity to bring its expertise to bear on the resolution of a challenge to a rule.").

That exception to the exhaustion doctrine applies here.  Before Plaintiffs sued to challenge the Secretary's interpretation of Section 401, a Section 401-reclassified rural hospital raised the same "particular question of statutory construction," Def's Br. at 21, with the Secretary during the last MGCRB application period.  The hospital argued that "under § 401," it should "be evaluated as a rural provider for all criteria and determinations for the MGCRB reclassification process" because "hospitals with acquired rural status should be evaluated in the same way that the MGCRB evaluates applications from hospitals physically located in rural areas."  Decision of the CMS Administrator (Feb. 15, 2019), ECF No. 13-2 at 4.  The MGCRB rejected that argument, and the CMS Administrator affirmed the decision.  *Id.* at 14–15.  Indeed, that position is the same one the Secretary expressed in response to a comment on the April 2016 proposed interim final rule.[6]  For these reasons, it would have been futile if, before suing, Plaintiffs had raised the same argument that the Secretary had already repeatedly rejected.[7]

---

[6] Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals, 81 Fed. Reg. 56,762, 56,925 (Aug. 22, 2016) ("[T]he commenter's statement that the average hourly wage of a hospital with a § 412.103 redesignation is compared to the average hourly wage of hospitals in the State's rural area under § 412.230(d)(1)(iii)(C) is incorrect.  Instead, the hospital's average hourly wage would be compared to the average hourly wage of all other hospitals in its urban geographic location using the rural distance and average hourly wage criteria.").

[7] Although it appears likely that Plaintiffs personally raised this Section 401 statutory interpretation issue with the Secretary in their September 2019 applications for MGCRB

Because "the issue was expressly addressed by [the Secretary]," it "is properly before the court." *Natural Res. Def. Council v. EPA*, 755 F.3d 1010, 1023 (D.C. Cir. 2014).

### B.      The Secretary's Interpretation of Section 401 of the Medicare Act

Plaintiffs allege that the Secretary's interpretation—"which prevents [them] from being treated as located in the rural area of the state in which each is located for MGCRB reclassification"—"is contrary to Section 401 and violates the Medicare Act." 2d Am. Compl. ¶ 52. The Court agrees that the text of Section 401 forecloses the Secretary's interpretation. "'Congress has directly spoken to the precise question at issue,' and 'the intent of Congress is clear.'" *City of Clarksville*, 888 F.3d at 482 (quoting *Chevron*, 467 U.S. at 842). Section 401 requires the Secretary to "treat the [Section 401] hospital as being located in the rural area . . . of the State" "[f]or purposes of" Subsection (d). 42 U.S.C. § 1395ww(d)(8)(E)(i). Subsection (d) includes the MGCRB. 42 U.S.C. § 1395ww(d)(10). So when a hospital reclassifies from urban to rural under Section 401, and the hospital applies for MGRCB reclassification, the Secretary must consider "the area in which the hospital is located," 42 C.F.R. § 412.230(d)(1)(iii)(C), to be the "rural area . . . of the State," 42 U.S.C. § 1395ww(d)(8)(E)(i). The Secretary may not consider that area to be the *urban* area of the state, even if the hospital is geographically located there, as it has done in applying Section 412.230(d)(1)(iii)(C). Indeed, Congress used the word "shall," language more than precatory, *see United States v. Monzel*, 641 F.3d 528, 531–32 (D.C. Cir. 2011), and spoke "in plain terms" in order "to circumscribe," not "to enlarge, agency discretion," *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013); *see also Lawrence + Mem'l Hosp.*, 812 F.3d at 265 ("Congress did not grant the Secretary discretion in carrying out the

---

reclassification, *see* Tobias Decl. ¶ 13, they failed to do so "before filing suit in federal court," *Hidalgo v. FBI.*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), which is typically required to exhaust administrative remedies, *id.*; *see* Tobias Decl. ¶ 13; ECF No. 1.

provision 'the Secretary shall treat the hospital as being located in the rural area,' as it did in other parts of Section 401.").

In seeking *Chevron* deference for its interpretation, the Secretary argues that the statute is ambiguous in several ways. But none of his arguments carry the day. First, he argues that Section 401 grants him discretion to "publish guidelines to be utilized by the [MGCRB] in rendering decisions on applications" for reclassification. 42 U.S.C. § 1395ww(d)(10)(D)(i). No doubt. But that discretion remains subject to the statutory command of Section 401. "Whatever rules and regulations the Secretary adopts for the MGCRB process (assuming they are otherwise lawful under the Medicare Act), hospitals that acquire rural status by way of Section 401 must be treated 'as being located in the rural area . . . of the State in which the hospital is located.'" Pl's Reply at 7 (quoting 42 U.S.C. § 1395ww(d)(8)(E)(i)).

This is not the first time the Secretary has cited his discretion in handling MGCRB applications to disregard Section 401's clear mandate. In *Geisinger*, the Third Circuit rejected nearly the same argument when the Secretary defended an earlier regulation known as the "Reclassification Rule," which barred Section 401 hospitals from reclassifying before the MGCRB altogether. 794 F.3d at 386. The Secretary argued then that "[n]othing in Section 401 constrains the Secretary's broad discretion to establish criteria for [MGCRB] reclassification." *Id.* at 395; *compare with* Def's Br. at 20 (arguing that Plaintiffs' reading of the statute would "abrogate[] the Secretary's congressionally delegated authority to determine the criteria for MGCRB reclassification"); *and* Def's Reply at 3 ("[T]he wide discretion the statute vests in the Secretary evinces a desire by Congress to allow the Secretary great latitude in determining the criteria for MGCRB reclassification . . . ."). But the *Geisinger* court found, as the Court holds here, that Section 401 "lends itself to the opposition conclusion." 794 F.3d at 395. "While the

Secretary is unquestionably authorized to issue guidelines regarding [MGCRB] reclassification,

e.g., to design the proximity standards for urban versus rural hospitals, it does not follow that the

Secretary is authorized to disregard the plain language of Section 401.  Rather, Section 401[]

mandate[s] that the Secretary shall treat Section 401 hospitals as rural without adding any

discretionary language as Congress used" elsewhere.  *Id.*

Second, the Secretary argues that nothing in the statute "expressly, unambiguously

precludes" him from comparing Section 401 hospitals' AHW to those in urban CBSAs when

deciding MGCRB applications.  Def's Br. at 21.  In other words, "Section 401 simply does not

reach down to address th[e] level of detail regarding the interaction of the two reclassification

mechanisms," Def's Reply at 3, or "what it means to treat someone as rural at this granular level

of detail . . . in the MGCRB process," Hrg. Tr. 39:6–8; *see also id.* 45:15–19.  But that would set

an impossible standard for legislative clarity.  Congress enacted a general command to treat

Section 401 hospitals as rural for purposes of Subsection (d), which includes the MGCRB

process.  It could not, and need not, have separately addressed every conceivable set of

circumstances to which that command might apply.[8]  As Judge Henderson has explained, "'Thou

shall not kill' is a mandate neither silent nor ambiguous about whether murder is permissible if

committed after 5.00 p.m.—or, for that matter, if committed in the billiard room with the

candlestick . . . ." *AFL-CIO v. FEC*, 333 F.3d 168, 181 (D.C. Cir. 2003) (Henderson, J.,

---

[8] The Secretary argues that had Congress intended to trump the Secretary's authority to issue
MGCRB guidelines, it could have added language to Section 401 that the Secretary must treat a
Section 401 hospital as rural "notwithstanding any other provision of law."  Def's Br. at 19.  And
the Secretary attempts to show an "internal tension in the statute," *id.* at 18, because the
Medicare Act explicitly bars the MGCRB from comparing a different kind of hospital's AHW to
that of hospitals "in the area in which it is located," 42 U.S.C. § 1395ww(d)(10)(D)(iii),
suggesting that Congress could have spoken more clearly to the question at issue here.  But
neither argument reflects genuine ambiguity in Section 401.

concurring).  The Secretary also advanced this argument when defending the Reclassification

Rule in a post-*Geisinger* case, and the court there rejected it.  *Lawrence + Mem'l Hosp.*, 812

F.3d at 265.  The Second Circuit held that a "rule that required Congress to expressly reference

the interplay between each aspect of the relevant subsection and Section 401 reclassification

would hinder Congress's ability to amend statutes across wide swaths of legislative territory."

*Id.*[9]

        Third, the Secretary describes what are essentially policy reasons why the Secretary uses

hospitals' geographic locations in assessing Section 401 hospitals' MGCRB applications.  He

argues that HHS "must draw the line" somewhere on who may reclassify through the MGCRB

reimbursement system (which is budget-neutral) and emphasizes that the purpose of MGCRB

reclassification is to assess if a hospital has been disadvantaged by having to pay higher wages

than others in its geographic area.  Hrg. Tr. 29:1-5; 37:14–15; *see id.* 31:11–33:7, 33:25–34:10,

36:16–37:12.  But Plaintiffs do not argue that geographic location is altogether irrelevant.  *See id.*

40:7–11, 46:18–47:3.  After all, the MGCRB proximity criterion accounts for the actual location

of *the hospital* (not the "area," 42 U.S.C. § 1395ww(d)(8)(E)(i)) to calculate distance to the

---

[9] The Secretary attempts to distinguish *Geisinger* and *Lawrence + Memorial Hospital* because
those cases concerned the Reclassification Rule, not at issue here, and did not address the same
"precise question at issue" about "the level of granular detail of how" the MGCRB should
"compute" Section 401 hospitals' AHW.  Hrg. Tr. 42:18–43:8.  But neither court framed the
question at issue in those cases so narrowly.  The *Geisinger* court decided "whether the Secretary
is required to treat hospitals with Section 401 status like hospitals physically located in rural
areas for purposes of Board reclassification" and "conclude[d] that Congress has unambiguously
expressed its intent that the Secretary shall do so."  794 F.3d at 391.  Likewise in *Lawrence +
Memorial Hospital*, the court "h[e]ld that the text of [Section 401] unambiguously supports [the]
position that the MGCRB must review reclassification applications by Section 401 hospitals
according to the standards applied to hospitals geographically located in a rural area."  812 F.3d
at 264.  As Plaintiffs put it, while those cases may not be on "all fours" with the question
presented here, at a minimum, they are close—"about three and three-quarters."  Hrg. Tr. 18:14–
15.

reclassified area.  *See* 42 C.F.R. § 412.230(b)(1) ("The distance from the hospital to the area is

no more than 15 miles for an urban hospital and no more than 35 miles for a rural hospital.").  In

any event, these policy arguments are simply not persuasive here.  Perhaps they would have

some salience at *Chevron*'s step two.  But at step one, they cannot override the clear text of the

statute.  Because Section 401 is unambiguous, "that is the end of the matter."  *Chevron*, 467 U.S.

at 842.

## IV.    Conclusion

For all of the above reasons, the Court will grant Plaintiffs' motion for summary

judgment, ECF No. 13; deny Defendants' cross-motion for summary judgment, ECF No. 18; and

remand the case to HHS for proceedings consistent with this Opinion.  A separate order will

issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 14, 2020